SEDGWICK LLP
CAROLINE H. MANKEY   (Bar No. 187302)
*caroline.mankey@sedgwicklaw.com*
ANURITA S. VARMA (Bar No. 279486)
*anurita.varma@sedgwicklaw.com*
801 South Figueroa Street, 19th Floor
Los Angeles, CA  90017-5556
Telephone: 213.426.6900
Facsimile: 877.547.6580

Attorneys for Plaintiffs
Penthouse Global Media, Inc. and General
Media Communications, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENTHOUSE GLOBAL MEDIA, INC., a Delaware corporation, GENERAL MEDIA COMMUNICATIONS, INC., a New York corporation, <br><br> Plaintiffs, <br><br> v. <br><br> GUCCIONE COLLECTION, LLC, a Delaware limited liability company, JEREMY FROMMER, an individual, RICK SCHWARTZ, an individual, JERRICK MEDIA HOLDINGS, INC., a Nevada corporation, JERRICK VENTURES, INC., a Nevada corporation, JERRICK VENTURES LLC, FILTHY GORGEOUS MEDIA, LLC, PARADOX LLC, a California limited liability company, JARED LETO, an individual, and DOES 1-100, inclusive, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR: (1) COPYRIGHT INFRINGMENT; (2) TRADEMARK INFRINGEMENT (3) FALSE DESIGNATION OF ORIGIN; (4) TRADEMARK DILUTION; (5) COMMON LAW TRADEMARK INFRINGEMENT; (6) COMMON LAW UNFAIR COMPETITION; (7) UNFAIR COMPETITION; (8) TRADEMARK DILUTION; (9) DECLARATORY RELIEF; (10) FALSE ADVERTISING; AND (11) UNJUST ENRICHMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Sedgwick LLP

Plaintiffs PENTHOUSE GLOBAL MEDIA, INC. and GENERAL MEDIA COMMUNICATIONS, INC. (collectively, "Penthouse") hereby complain against defendants GUCCIONE COLLECTION, LLC, JEREMY FROMMER, RICK SCHWARTZ, JERRICK MEDIA HOLDINGS, INC., JERRICK VENTURES, INC., JERRICK VENTURES LLC, FILTHY GORGEOUS MEDIA, LLC, PARADOX LLC, JARED LETO, and DOES 1-100 (collectively, "Defendants") and alleges as follows:

## PARTIES

1.     Plaintiff Penthouse Global Media, Inc. is a Delaware corporation with its principal place of business in Chatsworth, California.

2.     Plaintiff General Media Communications, Inc. is a New York corporation with its principal place of business in Chatsworth, California.

3.     Penthouse is informed and believes that Guccione Collection, LLC, is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located in New Jersey.

4.     Penthouse is informed and believes that Defendant Jeremy Frommer is a citizen of the United States currently residing in New Jersey, and is the Chief Executive Officer of Jerrick Ventures, Inc. and Jerrick Media Holdings, Inc.; a member of Jerrick Ventures, LLC; and a principal of Guccione Collection, LLC.

5.     Penthouse is informed and believes that Rick Schwartz is a citizen of the United States currently residing in New York, and is the President of Jerrick Media Holdings, Inc., and a member of Jerrick Ventures, LLC.

6.     Penthouse is informed and believes that Defendant Jerrick Media Holdings, Inc. is a technology and digital media company distributes media content through its portfolio of brands, incorporated under the laws of the state of Nevada, with its principal place of business in Englewood, New Jersey.

7.     Penthouse is informed and believes that Jerrick Ventures, Inc. is a

1   digital media holding company founded in 2013, incorporated in Nevada, with its

2   principal place of business in New Jersey.

3         8.     Penthouse is informed and believes that Defendant Jerrick Ventures,

4   LLC, is a subsidiary of Defendant Jerrick Media Holdings, Inc., with its principal

5   place of business in New Jersey.

6         9.     Penthouse is informed and believes that Defendant Filthy Gorgeous

7   Media, LLC is a subsidiary of Defendant Jerrick Media Holdings, Inc.

8        10.     Penthouse is informed and believes that Defendant Paradox, LLC is a

9   California limited liability corporation founded by Defendant Jared Leto.

10        11.     Penthouse is informed and believes that Jared Leto is a citizen of the

11   United States currently residing in Los Angeles, California, and is the founder and

12   officer of Defendant Paradox LLC.

13        12.     Penthouse is informed and believes that Defendants Does 1 through

14   100, inclusive, are improperly using Plaintiffs' property.  The true names, whether

15   corporate, individual, or otherwise of Does 1 through 100, inclusive, are presently

16   unknown to Penthouse and, therefore, these Does are being sued by fictitious names,

17   and Penthouse will seek leave to amend this Complaint to include the true names

18   and capacities when the same have been ascertained.

19        13.     Penthouse is informed and believes that at all times relevant to this

20   action, each of the Defendants was the agent, affiliate, officer, director, manager,

21   member, principal, alter-ego, and/or employee of the other Defendant and was at all

22   times acting within the scope of such agency, affiliation, alter-ego relationship

23   and/or employment, and actively participated in or subsequently ratified and

24   adopted, or both, each and all of the acts or conduct alleged herein with full

25   knowledge of each and every violation of Penthouse's rights and the damages to

26   Penthouse proximately caused thereby.

27

28

Sedgwick LLP

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over the claims alleged by Penthouse because their claims arise under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, and the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and jurisdiction is conferred by 28 U.S.C. § 1331 and 1338 (a) and (b).

15.     This Court has specific personal jurisdiction over the Defendants because in intentionally and willfully advertising, selling and renting the motion picture *Caligula* worldwide and to California residents on www.vimeo.com, and using Penthouse's Caligula copyrights and trademarks to do so, and have infringed on the registered OMNI trademark by operating the https://omni.media website, all of which Defendants knew would cause harm to Penthouse in California, given that Penthouse notified Defendants of Penthouse's superior rights to the Caligula copyrights and trademarks as far back as September 2013.  Defendants also knew that their conduct would cause harm to the registrant of the OMNI trademarks worldwide.  In so doing, they have purposefully availed themselves of the privilege of conducting activities in this forum, thereby invoking the benefits and protections of its laws.  Venue is also properly laid in this district under 28 U.S.C. § 1391(b)(3) due to the Court's personal jurisdiction over the Defendants in this action.

## FACTUAL BACKGROUND

16.     Bob Guccione was the founder, owner and publisher of *Penthouse* Magazine and the founder of the iconic Penthouse brand.  In 1979, Mr. Guccione produced a motion picture titled *Caligula*, which is now a cult classic that blends ancient Roman history with erotica and stars luminaries including Helen Mirren and Peter O'Toole.  Mr. Guccione died in 2010.

17.     General Media Communications, Inc. ("General Media") was the original publisher and owner of the *Penthouse* Magazine and the owner of the famous PENTHOUSE trademarks, as well as CALIGULA trademarks, including

1  those pending registration by the United States Patent and Trademark Office under

2  Serial Nos. 87284418 and 86803795 (the "CALIGULA Marks").

3        18.    In 2012, Defendant Jeremy Frommer purchased at auction the contents

4  of a storage facility in Englewood, New Jersey.  Included in this storage facility

5  were numerous examples of the erotic photography for which Mr. Guccione was

6  famous, as well as films, magazines, artwork, and documents of historical, business

7  and legal significance associated with the PENTHOUSE brand, including archival

8  material, physical editions, photographs and illustrations from Guccione's OMNI

9  magazine, and possibly including items relating to the *Caligula* motion picture.

10        19.    In November 2012, Mr. Frommer also purchased all of the rights to the

11  items belonging to Mr. Guccione that had come into the possession of an individual

12  named James C. Sell, who had obtained a judgment against Mr. Guccione in

13  Arizona.  Thereafter, Mr. Frommer assigned all of the purchased property to a newly

14  formed entity, Guccione Collection LLC ("GC").  Mr. Frommer then began offering

15  the purchased items for sale through a website.

16  <u>CALIGULA</u>

17        20.    On or about September 17, 2013, General Media sent a letter to GC and

18  Jeremy Frommer notifying them that GC's website infringed upon its copyrights and

19  trademarks by, among other things, offering the *Caligula* motion picture for viewing

20  by the public for a fee. General Media demanded that GC and Frommer cease and

21  desist from using the CALIGULA Marks and copyright protected material on their

22  website.

23        21.    Also on or about September 17, 2013, General Media sent a takedown

24  notice to the domain manager and host demanding that the infringing material be

25  taken down from Frommer's and GC's website.  The domain host took down GC's

26  website.

27        22.    On September 25, 2013, GC filed a Complaint for Declaratory and

28

Sedgwick ℒℒᴾ

Other Relief in the case of *In re PMGI Holdings Inc.*, United States Bankruptcy Court for the District of Delaware Case No. 13-52259-CSS, in which it sought a judicial declaration that it was not infringing on any intellectual property rights, including in the motion picture *Caligula*, based on its purchase of the personal property of Mr. Guccione at auction and from Mr. Sell.  On October 25, 2013, General Media filed an answer and counterclaim against GC.  Both the complaint and the counterclaim were later mutually dismissed without prejudice and with no rulings on the merits of any of the claims or counterclaims.

23.     Penthouse Global Media, Inc. ("Penthouse Global Media") is the successor to and parent owner of the PENTHOUSE brand associated with *Penthouse* Magazine and related merchandise and services, including the OMNI Marks discussed below.  In 2016, Penthouse Global Media acquired the PENTHOUSE brand's assets, including all of its intellectual property and all rights associated to the motion picture *Caligula*.  At no time has Penthouse or any affiliated entity ever transferred or licensed any of its copyrights, trademarks, or other intellectual property to any of the Defendants for any purpose.

24.     Despite having being informed of its infringement of intellectual property rights protecting *Caligula*, Defendants have willfully and blatantly continued their unauthorized copying, distribution, sale and other use of Penthouse's intellectual property.  More specifically, on or about May 8, 2017, Penthouse discovered that Defendants were offering the motion picture *Caligula* to the public for sale or rental on the website www.vimeo.com ("Vimeo.com").

25.     Defendants also used the CALIGULA Marks on Vimeo.com to advertise the sale and rental of the *Caligula* motion picture, in a manner that is likely to cause confusion as to the source of the motion picture, in that Defendants describe it as "Bob Guccione's Caligula" and state:

Bob Guccione's Caligula is a 1979 erotic historical drama film focusing on the rise and fall of the Roman Emperor Caligula. Starring Malcolm McDowell, Teresa Ann Savoy, Helen Mirren, Peter O'Toole, John Steiner and John Gielgud. Caligula is the only feature film produced by Bob Guccione, founder of Penthouse and OMNI magazines. Guccione cast Penthouse Pets as extras.

A unique film of its time, Caligula is the first to feature explicit pornographic content mixed with high production values and a cohesive narrative. Caligula's release was controversial and met with legal issues and controversies over its portrayal of violent and sexual content. The uncut version of Caligula is banned in several countries.

OMNI

26.    Bob Guccione was also one of the founders and the publisher of the science and science fiction magazine OMNI, which was first published in 1978 as a print magazine, and debuted as an online magazine in 1986, and utilized a logo consisting of the word OMNI in stylized font.  Through his use of the OMNI mark and logo in commerce to identify the source of the OMNI magazine, Guccione acquired common law trademarks in the word and the logo.

27.    Penthouse Global Media, Inc. ("Penthouse Global Media") is the successor to, assignee and current owner of the common law OMNI trademarks, and the United States trademark registrations and trademark application for the OMNI trademark, including Registration No. 4932689 for magazines of science fact, fiction and fantasy, Registration No. 4964743 for an internet website featuring electronic publications in the fields of science fiction, science fact, fantasy and futurism, and Serial No. 86002052, as well as international registrations (collectively, the "OMNI Marks"), and all of the goodwill associated with the OMNI Marks.

28.     Despite the fact that an application for registration of the OMNI Marks in connection with magazines had already been filed with the USPTO by Penthouse's predecessor in interest, signaling to the world that the OMNI Marks were not available for use by Defendants, in 2013, Defendants Frommer and Schwartz again willfully and blatantly disregarded the intellectual property rights of others and began planning to publish an online science and science fiction magazine using the OMNI Marks and to republish and sell archival material from the original OMNI magazine.

29.     On or about June 27, 2013, Defendant Jerrick Ventures, LLC filed an application for registration of the purported trademark OMNI REBOOT (Serial No. 85,972,230), which registration was refused by the United States Patent and Trademark Office because of a likelihood of confusion with a registered OMNI Mark.  On or about May 31, 2016, Jerrick Ventures, LLC filed a cancellation proceeding before the Trademark Trial and Appeal Board ("TTAB") seeking to cancel the OMNI Mark (Cancellation No. 92063829).  Because Penthouse General Media seeks a declaration in the present action that its registered OMNI Marks are valid and should not be cancelled, it will seek to have the cancellation proceeding before the TTAB stayed pending the judgment in this action.

30.     Despite knowing of the existence of the registered OMNI Marks, and despite being denied registration of Omni Reboot, Defendants nonetheless proceeded to willfully and blatantly infringe on the OMNI Marks by operating an online magazine at https://omni.media, which it refers to as OMNI Reboot, that not only uses the OMNI Marks in connection with the publication of an online magazine featuring science and science fiction topics, but also contains archival material from the original OMNI magazine, including magazine articles and reproductions of OMNI magazine covers, all without the permission or consent of Penthouse.

Sedgwick

31.     Defendants have issued various press releases to advertise and attract consumer attention to their activities using the OMNI Marks.  For example, on or about September 12, 2016, Defendant Jerrick Media Holdings, Inc. released a press release stating, among other things, that: "Jerrick has released a three part series of science fiction stories available for digital download, entitled OMNI Best of Science Fiction One, Two, and Three.  Content from the series is featured on Jerrick Media's brand OMNI, born from the science fiction magazine of the 1970s, 80s, and 90s, created by Bob Guccione."  On or about May 30, 2017, Jerrick Media Holdings, Inc. issued a press release stating that it had "announced today the launch of *The Omni Archive*…[that] features every issue of the seminal science fiction publication Omni" and that "Omni Magazine was an award-winning science fiction magazine…[c]reated by publishing mogul Bob Guccione."  The press release further advertised that "all 200 issues of the published magazines are available for viewing and purchase on Amazon….  This is the first time the collection has been available for digital download in high-resolution."

32.     Various media outlets have republished information released by Defendants.  For example, on or about June 26, 2017, Variety magazine online (www.variety.com) reported that Defendants Jared Leto and Paradox LLC had partnered with Defendant Jerrick Media to produce original content using the OMNI Marks.  Similarly, www.pagesix.com reported that Jared Leto had partnered with Defendant Rick Schwartz to develop a futuristic television anthology under the OMNI Marks.  Defendants' dissemination of such information to the media reflects their ongoing and blatant disregard for the intellectual property rights of Penthouse and their manifest intent to capitalize on those rights for their own gain.

## FIRST CLAIM FOR RELIEF

(Copyright Infringement)

33.     Penthouse incorporates the allegations of each foregoing paragraph as

84886334v1                                                    9

1    though fully set forth herein.

2        34.    Penthouse is the owner of the following registered copyrights relating

3    to the motion picture *Caligula*:

4            a.    Registration No. TX0000204514 (created in 1978 and registered

5        in 1979): *Gore Vidal's Caligula* (novel);

6            b.    Registration No. PA0000083587 (created in 1979 and registered

7        in 1980): *Caligula / a Penthouse Films International and Felix*

8        *Cinematografica, S.R.L. production; a Bob Guccione, Franco Rossellini*

9        *Production* (motion picture);

10           c.    Registration No. PA0000449630 (1990 supplement to

11       Registration No. PA0000083587): *Caligula By Felix Cinematografica*

12       (motion picture); and

13           d.    Registration No. PA0001737842 (created in 2007 and registered

14       in 2009): *Caligula: The Imperial Edition* (motion picture *Caligula* with

15       alternate pre-release version, *The Making of Caligula* documentary, audio

16       commentaries, video interviews, deleted scenes, alternate scenes, behind the

17       scenes footage, set photos, packaging text and artwork).

18       35.    Defendants have had access to the motion picture *Caligula* through its

19   widespread distribution since its creation in 1979, as well as through the purchase by

20   Mr. Frommer of various items of Mr. Guccione's memorabilia.  Defendant GC's

21   access to the motion picture *Caligula* was admitted in its complaint for declaratory

22   relief filed on September 25, 2013, in the case of *In re PMGI Holdings Inc.*, United

23   States Bankruptcy Court for the District of Delaware Case No. 13-52259-CSS, in

24   which it sought a judicial declaration that it was not infringing on any intellectual

25   property rights, including in the motion picture *Caligula*.

26       36.    Defendants recently have made a copy of the motion picture *Caligula*

27   available to the public for purchase or rental on Vimeo.com.

28

Sedgwick LLP

84886334v1                                    10

37.   Penthouse has never transferred or licensed any interest in any copyrights in *Caligula* to any of the Defendants, either in writing or otherwise, and has not consented to Defendants' reproduction, publication, distribution and sale of the motion picture *Caligula.*

38.   Defendants' unauthorized reproduction, publication, distribution and sale of the motion picture *Caligula* constitutes infringement of Penthouse's registered copyrights in violation of the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

39.   Penthouse is informed and believes, and based thereon alleges, that Defendants' copying, distribution and sale of the motion picture *Caligula*, after being informed of Penthouse's copyrights, was deliberate, willful, malicious, oppressive, and in manifest disregard of Penthouse's proprietary rights.

40.   Defendants' willful copyright infringement has caused, and will continue to cause, Penthouse to suffer substantial injuries, loss, and damage to its proprietary and exclusive rights to the motion picture *Caligula* and further has damaged Penthouse's business reputation and goodwill, diverted their trade, and caused loss of profits, all in an  as-yet undetermined amount.  Penthouse is entitled to compensatory damages, as well as the profits earned by Defendants as a result of their infringement pursuant to 17 U.S.C. § 504.

41.   Defendants' copyright infringement, and the threat of continuing infringement, have caused and will continue to cause Penthouse repeated and irreparable injury.  It would be difficult to ascertain the amount of money damages that would afford Penthouse complete relief at law for Defendants' acts and continuing acts.  Penthouse's remedy at law is not adequate to compensate it for the injuries already inflicted and further threatened.  Therefore, Penthouse is entitled to preliminary and permanent injunctive relief pursuant to 17. U.S.C. § 502.

42.   Penthouse is also entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF

(Infringement of Registered Trademark Under 15 U.S.C. § 1114)

43.     Penthouse incorporates the allegations of each foregoing paragraph as though fully set forth herein.

44.     Penthouse is the owner of registered OMNI Marks, including Registration No. 4932689 for magazines of science fact, fiction and fantasy, Registration No. 4964743 for an internet website featuring electronic publications in the fields of science fiction, science fact, fantasy and futurism.

45.     Defendants are using the OMNI Marks in commerce in connection with their online science and science fiction magazine and sales of OMNI magazines and related goods.

46.     Defendants never sought or received Penthouse Global Media's authorization to use the OMNI Marks in connection with their online magazine or sales.

47.     Defendants' use of the OMNI Marks is likely to cause and/or has actually caused confusion in the marketplace by creating the false and mistaken impression that Defendants' publication of an OMNI online magazine and related activities are affiliated, connected or associated with Penthouse, or that they originate with, or are sponsored or approved by Penthouse.

48.     Penthouse is informed and believes, and based thereon alleges, that Defendants' purpose in using the OMNI Marks was and is to deceive, mislead and confuse customers and the public into believing that Defendants' online magazine and related activities are affiliated, connected or associated with Penthouse, or that they originate with, or are sponsored or approved by Penthouse, and to trade on the substantial and historical fame, notoriety, reputation and goodwill associated with the OMNI Marks.

49.     Defendants' use of the OMNI Marks violates the Lanham Act, 15

Sedgwick LLP

U.S.C. § 1114.  Defendants' use of the OMNI Marks also falls within the definition of a counterfeit mark set forth in the Lanham Act, 15 U.S.C. § 1116(d).

50.     Defendants' use of the OMNI Marks has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to Penthouse in the diminution of value and goodwill of the OMNI Marks, and in their impairment to serve as trademarks, for which Penthouse has no adequate legal remedy. Accordingly, Penthouse is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

51.     As a direct and proximate result of Defendants' wrongful conduct, Penthouse has been and will continue to be damaged by, without limitation, loss of profit, and diminution in the value of the OMNI Marks and in its reputation and goodwill, in an amount to be proven at trial.

52.     Defendants' wrongful use of the OMNI Marks was and continues to be knowing, deliberate, willful, fraudulent, and without extenuating circumstances. Because Defendants are intentionally, knowingly, and willfully using counterfeits of the registered OMNI Marks, Penthouse is entitled to recover three times the amount of actual damages or profits, whichever is greater, or statutory damages, and attorney's fees and costs incurred in this action pursuant to 15 U.S.C. § 1117(a) - (c).

## THIRD CLAIM FOR RELIEF

(False Designation of Origin Under 15 U.S.C. § 1125(a))

53.     Penthouse incorporates the allegations of each foregoing paragraph as though fully set forth herein.

54.     The CALIGULA and OMNI Marks are distinctive of goods and services originating with Penthouse.  The Defendants' unauthorized use of the CALIGULA and OMNI Marks, particularly when combined with references to Mr.

Guccione and Penthouse, is likely to cause and, on information and belief, has actually caused confusion in the marketplace by creating the false and mistaken impression that Defendants' advertising, rental and sales of the *Caligula* motion picture, and distribution of the online Omni Reboot magazine, are affiliated, connected or associated with Penthouse, or that they originate with, or are sponsored or approved by Penthouse.

55.     Defendants' use of the CALIGULA and OMNI Marks has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to Penthouse in the diminution of their value and goodwill as trademarks, and in their impairment to serve as a trademarks, for which Penthouse has no adequate legal remedy. Accordingly, Penthouse is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

56.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been and will continue to be damaged by, without limitation, lost sales and diminution in the value of the CALIGULA and OMNI Marks and in its reputation and goodwill, in an amount to be proven at trial.

57.     Defendants' wrongful use of the CALIGULA and OMNI Marks is knowing, deliberate, willful, fraudulent, and without extenuating circumstances. Penthouse is therefore entitled to recover its actual damages and attorney's fees and costs incurred in this action, as well as Defendants' profits from their infringement of the CALIGULA and OMNI Marks.

### FOURTH CLAIM FOR RELIEF

(Trademark Dilution Under 15 U.S.C. § 1125(c))

58.     Penthouse incorporates the allegations of each foregoing paragraph as though fully set forth herein.

59.     The CALIGULA and OMNI Marks are famous and distinctive in that

Sedgwick

they are widely recognized by the general consuming public as a designation of Penthouse as the source of the goods or services represented by the CALIGULA and OMNI Marks.

60.     Defendants' use of the CALIGULA and OMNI Marks impairs the distinctiveness of the famous CALIGULA and OMNI Marks and, as such, causes dilution by blurring.

61.     Defendants willfully intended to trade on the recognition and value of the CALIGULA and OMNI Marks.

62.     Defendants' use of the CALIGULA and OMNI Marks has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to Penthouse in the diminution of their value and goodwill as trademarks, and in their impairment to serve as a trademarks, for which Penthouse has no adequate legal remedy. Accordingly, Penthouse is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

63.     Defendants' wrongful use of the CALIGULA and OMNI Marks commenced after October 6, 2006.  Defendants' wrongful use of the CALIGULA and OMNI Marks was and continues to be knowing, deliberate, willful, fraudulent, and without extenuating circumstances.  Penthouse is therefore entitled to recover its damages, Defendants' profits, and Penthouse's attorneys' fees and costs of this action, pursuant to 15 U.S.C. § 1117(a).

64.     Penthouse is further entitled to an order that all materials in the possession of the Defendant bearing the CALIGULA and OMNI Marks be delivered up and destroyed pursuant to 15 U.S.C. § 1118.

**FIFTH CLAIM FOR RELIEF**

(Common Law Trademark Infringement)

65.     Penthouse incorporates the allegations of each foregoing paragraph as

Sedgwick

though fully set forth herein.

66. Defendants are using the CALIGULA Marks in commerce in connection with their advertising, rental and sale of copies of the *Caligula* motion picture.  Defendants are using both the exact word that comprises the CALIGULA Marks, as well as references to Mr. Guccione and Penthouse.

67. Defendants are using the OMNI Marks in commerce in connection with their publication of the online Omni Reboot magazine.  Defendants are using both the exact word that comprises the OMNI Marks, as well as references to Mr. Guccione and Penthouse.

68. Defendants never sought or received Penthouse's authorization to use the CALIGULA Marks or the OMNI Marks.

69. Defendants' use of the CALIGULA and OMNI Marks is likely to cause and/or has actually caused confusion in the marketplace by creating the false and mistaken impression that Defendants' advertising, sales and rentals of the *Caligula* motion picture, and their online publication of the Omni Reboot magazine, are being marketed are affiliated, connected or associated with Penthouse, or that they originate with, or are sponsored or approved by Penthouse.

70. Penthouse is informed and believes, and based thereon alleges, that Defendants' purpose in using the CALIGULA and OMNI Marks was and is to deceive, mislead and confuse customers and the public into believing that Defendants' advertising, sales and rentals of the *Caligula* motion picture, and their online publication of the Omni Reboot magazine, are affiliated, connected or associated with Penthouse, or that they originate with, or are sponsored or approved by Penthouse, and to trade on the substantial and historical fame, notoriety, reputation and goodwill associated with the CALIGULA and OMNI Marks.

71. Defendants' use of the CALIGULA and OMNI Marks violates the common law of the State of California.

Sedgwick

72.     Defendants' use of the CALIGULA and OMNI Marks has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to Penthouse in the diminution of value and goodwill of the CALIGULA and OMNI Marks, and in their impairment to serve as trademarks, for which Penthouse has no adequate legal remedy.  Accordingly, Penthouse is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

73.     As a direct and proximate result of Defendants' wrongful conduct, Penthouse has been and will continue to be damaged by, without limitation, loss of profit, and diminution in the value of the CALIGULA and OMNI Marks and in its reputation and goodwill, in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF

(Common Law Unfair Competition)

74.     Penthouse incorporates the allegations of each foregoing paragraph as though fully set forth herein.

75.     Defendants' use of the CALIGULA and OMNI Marks has the effect of passing off Defendants' advertising, sale and rental of the *Caligula* motion picture, and their online publication of the Omni Reboot magazine and related sales activities, as being produced, endorsed or authorized by Penthouse.

76.     Defendants' misconduct constitutes unfair competition in that it offends established public policy and is immoral, unethical, oppressive, unscrupulous and injurious to consumers.

77.     As a direct and proximate result of Defendants' wrongful conduct, Penthouse has been and will continue to be damaged by, without limitation, loss of profit, and diminution in the value of the CALIGULA and OMNI Marks and in their reputation and goodwill, in an amount to be proven at trial.

78.     The acts of unfair competition alleged herein were committed with

oppression, fraud and malice.  Specifically, Defendants used the CALIGULA and OMNI Marks with knowledge that Penthouse owns the exclusive right to such use. Defendants' continuing use of the CALIGULA and OMNI Marks was unauthorized and caused consumer confusion, resulting in continuing injury to Penthouse.

79.    Penthouse requests the imposition of exemplary damages pursuant to California Civil Code § 3294.

### SEVENTH CLAIM FOR RELIEF

(Unfair Competition in Violation of

California Business & Professions Code § 17200, *et seq.*)

80.    Penthouse incorporates the allegations of each foregoing paragraph as though fully set forth herein.

81.    Defendants' unauthorized use of the CALIGULA and OMNI Marks constitutes unlawful, unfair or fraudulent business acts or practices within the meaning of California Business & Professions Code § 17200.

82.    Defendants' wrongful conduct has caused and, if not enjoined, will continue to cause irreparable and continuing harm to Penthouse, for which it has no adequate legal remedy.

### EIGHTH CLAIM FOR RELIEF

(Trademark Dilution in Violation of

California Business & Professions Code § 14247, *et seq.*)

83.    Penthouse incorporates the allegations of each foregoing paragraph as though fully set forth herein.

84.    The CALIGULA and OMNI Marks are famous and distinctive in California in that they are widely recognized by the general consuming public of this state as a designation of Penthouse as the source of the goods or services represented by the CALIGULA and OMNI Marks.

85.    Defendants began using the CALIGULA and OMNI Marks without

Sedgwick LLP

authorization from Penthouse after the CALIGULA and OMNI Marks had become famous.

86.   Defendants' unauthorized use of the CALIGULA and OMNI Marks is likely to cause dilution of the famous CALIGULA and OMNI Marks.

87.   Defendants' unauthorized use of the CALIGULA and OMNI Marks has caused and, if not enjoined, will continue to cause irreparable and continuing harm to Penthouse, for which it has no adequate legal remedy.

88.   Defendants' dilution of the CALIGULA and OMNI Marks was willful, as evidenced by their continuing use of the CALIGULA and OMNI Marks after being advised of Penthouse's exclusive trademark rights, entitling Penthouse to an award of up to three times Defendants' profits from, and up to three times all damages suffered by reason of Defendants' wrongful use of the CALIGULA and OMNI Marks, pursuant to Sections 14247(b) and 14250 of the California Business & Professions Code.

## NINTH CLAIM FOR RELIEF

### (Declaratory Relief)

89.   Penthouse incorporates the allegations of each foregoing paragraph as though fully set forth herein.

90.   This is an action for declaratory judgment of the Penthouse's priority of right as to the OMNI Marks pursuant to the Lanham Act, 15 U.S.C. § 1057(c).

91.   An actual and justiciable controversy exists between Penthouse and Defendant Jerrick Ventures LLC regarding the parties' respective rights in regards to the OMNI Marks, as evidenced by Jerrick Ventures LLC's filing of a Petition for Cancellation of a registered OMNI Mark (Cancellation No. 92063829) (the "Cancellation"),

92.   The registrant of the OMNI Mark that Jerrick Ventures LLC seeks to cancel filed an intent-to-use application with the United States Patent and

Sedgwick LLP

1  Trademark Office on or about June 6, 2012.  The OMNI Mark was registered on the

2  Principle Register on April 5, 2016 (Reg. No. 4,932,689).  All of the OMNI Marks

3  were subsequently assigned to Penthouse, along with all of the goodwill associated

4  with them.

5      93.    In its Cancellation, Jerrick Ventures LLC admits that it did not start

6  using the OMNI or OMNI REBOOT marks in commerce until in or about August

7  2013.  Jerrick Ventures LLC further admits that it did not file an application to

8  register the purported OMNI REBOOT trademark until June 27, 2013.

9      94.    Jerrick Ventures LLC contends in the Cancellation that the OMNI

10  Mark should be cancelled because (a) there is a likelihood of confusion between the

11  OMNI and OMNI REBOOT marks, (b) the registrant of the OMNI Mark had no

12  bona fide intent to use the OMNI Mark in commerce at the time she filed her intent-

13  to-use application, and (c) Jerrick Ventures LLC obtained the right to use the OMNI

14  Mark and all of the goodwill associated therewith from the Estate of Bob Guccione.

15     95.    Penthouse denies the above-referenced contentions of Jerrick Ventures

16  LLC in the Cancellation and contends, and seeks this Court's declaration, that the

17  registrant's filing of the intent-to-use application on June 6, 2012, conferred a

18  priority of right superior to any rights of Jerrick Ventures LLC in any purported

19  OMNI REBOOT trademark and that the Cancellation should be dismissed with

20  prejudice.

### TENTH CLAIM FOR RELIEF

(False Advertising in Violation of California

Business and Professions Code § 17500, *et seq.*)

24     96.    Penthouse incorporates the allegations of each foregoing paragraph as

25  though fully set forth herein.

26     97.    Defendants have disseminated press releases and other online

27  publications falsely indicating or stating that they are the owners of the OMNI and/

28

Sedgwick LLP

or CALIGULA Marks and copyrights in an effort to make sales of copies of the *Caligula* motion picture, the OMNI magazines, memorabilia, and other goods.

98.    Defendants know that they do not own the OMNI and CALIGULA Marks or copyrights.  Not only have they not been assigned any such copyrights or trademarks, but the USPTO expressly refused to register Defendants' purported OMNI REBOOT mark due to the prior registration of one of the OMNI Marks, and Penthouse has notified Defendants of their infringement, including by way of its September 2013 cease and desist letter to Defendants GC and Frommer.

99.    Defendants' false statements as to their ownership of the OMNI and CALIGULA Marks and copyrights are causing consumers to purchase copies of the OMNI magazine and *Caligula* motion picture from Defendants, instead of from Penthouse, the rightful owner of the intellectual property rights.

100.    Defendants' conduct constitutes false advertising in violation of California Business and Professions Code § 17500, *et seq.*

101.    As a direct and proximate result of Defendants' false advertising, Penthouse has been and will continue to be damaged by, without limitation, loss of profit, and diminution in the value of the CALIGULA and OMNI Marks and in its reputation and goodwill, in an amount to be proven at trial.  If not enjoined, Defendants' false advertising will continue to cause irreparable and continuing harm to Penthouse, for which it has no adequate legal remedy.

**ELEVENTH CLAIM FOR RELIEF**

(Unjust Enrichment)

102.    Penthouse incorporates the allegations of each foregoing paragraph as though fully set forth herein.

103.    Through their wrongful and willful use of Penthouse's intellectual property, Defendants have received various benefits, including revenues generated by the publication and distribution of the *Caligula* motion picture and the OMNI

1  Magazine, as well as press, media and consumer attention to their unauthorized

2  activities.  Defendants have unjustly retained all such benefits at the expense of

3  Penthouse and have been unjustly enriched.

4       104.  As a direct and proximate result of Defendants' unjust retention of the

5  benefits they have received from their use of Penthouse's intellectual property,

6  Penthouse has been and will continue to be damaged by, without limitation, loss of

7  profit, and diminution in the value of the CALIGULA and OMNI Marks and in its

8  reputation and goodwill, in an amount to be proven at trial, for which it is entitled to

9  restitution.

10  **PRAYER FOR RELIEF**

11      WHEREFORE, Penthouse prays for relief as follows:

12      1.    The damages sustained by Penthouse and Defendants' profits;

13      2.    Treble damages for use of a counterfeit trademark pursuant to 15

14  U.S.C. § 1117(b);

15      3.    Punitive damages;

16      4.    Injunctive relief prohibiting Defendants from any future unauthorized

17  use of Penthouse's property that is the subject of this lawsuit;

18      5.    An order that all materials in the possession of the Defendant bearing

19  the CALIGULA and OMNI Marks be delivered up and destroyed;

20      6.    A judicial declaration that registrant's filing of the intent-to-use

21  application on June 6, 2012, conferred a priority of right superior to any rights of

22  Jerrick Ventures LLC in any purported OMNI REBOOT trademark and that the

23  Cancellation should be dismissed with prejudice.

24      7.    Penthouse's costs in this action and reasonable attorney's fees and

25  expenses;

26      8.    Prejudgment interest; and

27      9.    For such additional and further relief as this Court deems just and

28

Sedgwick␣␣

1   proper.

2

3   Dated:  July 6, 2017                    SEDGWICK LLP

4                                           By:  /s/ Caroline H. Mankey

5                                                Caroline H. Mankey
                                                 Attorneys for Plaintiffs
6                                                PENTHOUSE GLOBAL MEDIA, INC.
                                                 and GENERAL MEDIA
7                                                COMMUNICATIONS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

Plaintiffs Penthouse Global Media, Inc. and General Media Communications, Inc. hereby demand a trial by jury on all issues triable by jury.

Dated:  July 6, 2017                           SEDGWICK LLP


By: */s/ Caroline H. Mankey*

Caroline H. Mankey
Attorneys for Plaintiff
PENTHOUSE GLOBAL DIGITAL INC.
and GENERAL MEDIA
COMMUNICATIONS, INC.