SEDGWICK LLP
CAROLINE H. MANKEY   (Bar No. 187302)
caroline.mankey@sedgwicklaw.com
801 South Figueroa Street, 19th Floor
Los Angeles, CA  90017-5556
Telephone: 213.426.6900
Facsimile: 877.547.6580

Attorneys for Plaintiffs
Penthouse Global Media, Inc. and General
Media Communications, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENTHOUSE GLOBAL MEDIA, INC., a Delaware corporation, GENERAL MEDIA COMMUNICATIONS, INC., a New York corporation,<br><br>Plaintiffs,<br><br>v.<br><br>GUCCIONE COLLECTION, LLC, a Delaware limited liability company, JEREMY FROMMER, an individual, RICK SCHWARTZ, an individual, JERRICK MEDIA HOLDINGS, INC., a Nevada corporation, JERRICK VENTURES, INC., a Nevada corporation, JERRICK VENTURES LLC, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:17-CV-04980-PA (FFMx)<br><br>**SECOND AMENDED COMPLAINT FOR: (1) COPYRIGHT INFRINGMENT; (2) TRADEMARK INFRINGEMENT (3) FALSE DESIGNATION OF ORIGIN; (4) TRADEMARK DILUTION; (5) COMMON LAW TRADEMARK INFRINGEMENT; (6) COMMON LAW UNFAIR COMPETITION; (7) UNFAIR COMPETITION; (8) TRADEMARK DILUTION; (9) DECLARATORY RELIEF; (10) FALSE ADVERTISING; AND (11) UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs PENTHOUSE GLOBAL MEDIA, INC. and GENERAL MEDIA

COMMUNICATIONS, INC. (collectively, "Penthouse") hereby complain against

defendants GUCCIONE COLLECTION, LLC, JEREMY FROMMER, RICK

SCHWARTZ, JERRICK MEDIA HOLDINGS, INC., JERRICK VENTURES,

Sedgwick LLP

INC., JERRICK VENTURES LLC, and DOES 1-10 (collectively, "Defendants") and alleges as follows:

## PARTIES

1.      Plaintiff Penthouse Global Media, Inc. ("Penthouse Global Media") is a Delaware corporation with its principal place of business in Chatsworth, California.

2.      Plaintiff General Media Communications, Inc. ("General Media") is a New York corporation with its principal place of business in Chatsworth, California.

3.      Penthouse is informed and believes that Guccione Collection, LLC, is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located in New Jersey.

4.      Penthouse is informed and believes that Defendant Jeremy Frommer is a citizen of the United States currently residing in New Jersey, and is the Chief Executive Officer of Jerrick Ventures, Inc. and Jerrick Media Holdings, Inc.; a member of Jerrick Ventures, LLC; and a principal of Guccione Collection, LLC.

5.      Penthouse is informed and believes that Rick Schwartz is a citizen of the United States currently residing in New York, and is the President of Jerrick Media Holdings, Inc., and a member of Jerrick Ventures, LLC.

6.      Penthouse is informed and believes that Defendant Jerrick Media Holdings, Inc. is a technology and digital media company distributes media content through its portfolio of brands, incorporated under the laws of the state of Nevada, with its principal place of business in Englewood, New Jersey.

7.      Penthouse is informed and believes that Defendant Jerrick Ventures, Inc. is a digital media holding company founded in 2013, incorporated in Nevada, with its principal place of business in New Jersey.

8.      Penthouse is informed and believes that Defendant Jerrick Ventures, LLC, is a subsidiary of Defendant Jerrick Media Holdings, Inc., with its principal place of business in New Jersey.

/ / /

9.     Penthouse is informed and believes that Defendants Does 1 through 10, inclusive, are improperly using Plaintiffs' property.  The true names, whether corporate, individual, or otherwise of Does 1 through 10, inclusive, are presently unknown to Penthouse and, therefore, these Does are being sued by fictitious names, and Penthouse will seek leave to amend this Complaint to include the true names and capacities when the same have been ascertained.

10.     Penthouse is informed and believes that at all times relevant to this action, each of the Defendants was the agent, affiliate, officer, director, manager, member, principal, alter-ego, and/or employee of the other Defendant and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment, and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged herein with full knowledge of each and every violation of Penthouse's rights and the damages to Penthouse proximately caused thereby.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over the claims alleged by Penthouse because their claims arise under the Copyright Act, 17 U.S.C. §§ 101, *et seq*., and the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., and jurisdiction is conferred by 28 U.S.C. § 1331 and 1338 (a) and (b).

12.     This Court has specific personal jurisdiction over the Defendants because in intentionally and willfully advertising, selling and renting the motion picture *Caligula* worldwide and to California residents on www.vimeo.com, and using Penthouse's Caligula copyrights and trademarks to do so, and infringing on the registered OMNI trademark and copyrights by operating the https://omni.media website and posting infringing material on www.youtube.com and other websites, all of which Defendants knew would cause harm to Penthouse in California, given that Penthouse notified Defendants of Penthouse's superior rights to the Caligula copyrights and trademarks as far back as September 2013.  Defendants also knew

that their conduct would cause harm to the registrant of the OMNI trademarks and copyrights worldwide.  In so doing, they have purposefully availed themselves of the privilege of conducting activities in this forum, thereby invoking the benefits and protections of its laws.  Venue is also properly laid in this district under 28 U.S.C. § 1391(b)(3) due to the Court's personal jurisdiction over the Defendants in this action.

## FACTUAL BACKGROUND

13.    Bob Guccione was the founder, owner and publisher of *Penthouse* Magazine and the founder of the iconic Penthouse brand.  In 1979, Mr. Guccione produced a motion picture titled *Caligula*, which is now a cult classic that blends ancient Roman history with erotica and stars luminaries including Helen Mirren and Peter O'Toole.  Mr. Guccione died in 2010.

14.    General Media was the original publisher and owner of the *Penthouse* Magazine and the owner of the famous PENTHOUSE trademarks, as well as CALIGULA trademarks, including those pending registration by the United States Patent and Trademark Office under Serial Nos. 87284418 and 86803795 (the "CALIGULA Marks").

15.    In 2012, Defendant Jeremy Frommer purchased at auction the contents of a storage facility in Englewood, New Jersey.  Included in this storage facility were numerous examples of the erotic photography for which Mr. Guccione was famous, as well as films, magazines, artwork, and documents of historical, business and legal significance associated with the PENTHOUSE brand, including archival material, physical editions, photographs and illustrations from Guccione's OMNI magazine, and possibly including items relating to the *Caligula* motion picture.

16.    In November 2012, Mr. Frommer also purchased all of the rights to the items belonging to Mr. Guccione that had come into the possession of an individual named James C. Sell, who had obtained a judgment against Mr. Guccione in Arizona.  Thereafter, Mr. Frommer assigned all of the purchased property to a newly

Sedgwick LLP

formed entity, Guccione Collection LLC ("GC").  Mr. Frommer then began offering the purchased items for sale through a website.

CALIGULA

17.    On or about September 17, 2013, General Media sent a letter to GC and Jeremy Frommer notifying them that GC's website infringed upon its copyrights and trademarks by, among other things, offering the *Caligula* motion picture for viewing by the public for a fee. General Media demanded that GC and Frommer cease and desist from using the CALIGULA Marks and copyright protected material on their website.

18.    Also on or about September 17, 2013, General Media sent a takedown notice to the domain manager and host demanding that the infringing material be taken down from Frommer's and GC's website.  The domain host took down GC's website.

19.    On September 25, 2013, GC filed a Complaint for Declaratory and Other Relief in the case of *In re PMGI Holdings Inc.*, United States Bankruptcy Court for the District of Delaware Case No. 13-52259-CSS, in which it sought a judicial declaration that it was not infringing on any intellectual property rights, including in the motion picture *Caligula*, based on its purchase of the personal property of Mr. Guccione at auction and from Mr. Sell.  On October 25, 2013, General Media filed an answer and counterclaim against GC.  Both the complaint and the counterclaim were later mutually dismissed without prejudice and with no rulings on the merits of any of the claims or counterclaims.

20.    Penthouse Global Media is the successor to and parent owner of the PENTHOUSE brand associated with *Penthouse* Magazine and related merchandise and services.  In 2016, Penthouse Global Media acquired General Media and all of its assets associated with the PENTHOUSE brand, including all of the copyrights associated with the motion picture *Caligula*. .  However, General Media remains the registered owner of the pending CALIGULA trademark registrations (Serial Nos.

5

Sedgwick LLP

86803795 and 87284418), and it continues to own the common law CALIGULA trademarks, as well as the Omni Copyrights defined below.   At no time has Penthouse or any affiliated entity ever transferred or licensed any of its copyrights, trademarks, or other intellectual property to any of the Defendants for any purpose.

21.    Despite having being informed of its infringement of intellectual property rights protecting *Caligula*, Defendants have willfully and blatantly continued their unauthorized copying, distribution, sale and other use of Penthouse's intellectual property.  More specifically, on or about May 8, 2017, Penthouse discovered that Defendants were offering the motion picture *Caligula* to the public for sale or rental on the website www.vimeo.com ("Vimeo.com").

22.    Defendants also used the CALIGULA Marks on Vimeo.com to advertise the sale and rental of the *Caligula* motion picture, in a manner that is likely to cause confusion as to the source of the motion picture, in that Defendants describe it as "Bob Guccione's Caligula" and state:

> Bob Guccione's Caligula is a 1979 erotic historical drama film focusing on the rise and fall of the Roman Emperor Caligula. Starring Malcolm McDowell, Teresa Ann Savoy, Helen Mirren, Peter O'Toole, John Steiner and John Gielgud. Caligula is the only feature film produced by Bob Guccione, founder of Penthouse and OMNI magazines. Guccione cast Penthouse Pets as extras.
> A unique film of its time, Caligula is the first to feature explicit pornographic content mixed with high production values and a cohesive narrative. Caligula's release was controversial and met with legal issues and controversies over its portrayal of violent and sexual content. The uncut version of Caligula is banned in several countries.

OMNI

/ / /

23.     Bob Guccione was also one of the founders and the publisher of the science and science fiction magazine OMNI, which was first published in 1978 as a print magazine, and debuted as an online magazine in 1986, and utilized a logo consisting of the word OMNI in stylized font.  Through his use of the OMNI mark and logo in commerce to identify the source of the OMNI magazine, Guccione acquired common law trademarks in the word and the logo.

24.     Mr. Guccione published the OMNI magazines through the corporate entity Omni Publications International, Ltd. ("Omni Publications").  Omni Publications was the original registered author or co-author of all of the OMNI magazines and the owner, or one of the co-owners, of the copyright on the entire series of OMNI magazines (United States Copyright Office Registration No. CSN0012725), as well as the individual registrations on each of 197 individual OMNI magazines bearing Registration Numbers: TX0003991856, TX0004003252, TX0004020739, TX0004175916, TX0004269144, TX0003798785, TX0003775298, TX0003724378, TX0003835334, TX0003724590, TX0003847056, TX0003906046, TX0003907477, TX0003959999, TX0003938941, TX0003973417, TX0004018218, TX0003468820, TX0003544448, TX0003524892, TX0003561636, TX0003597140, TX0003620244, TX0003641732, TX0003641731, TX0003694283, TX0003681212, TX0003773673, TX0003246538, TX0003250764, TX0003300687, TX0003304449, TX0003329912, TX0003351964, TX0003446042, TX0003388380, TX0003420400, TX0003420167, TX0003449685, TX0003468834, TX0003019904, TX0002994617, TX0003039147, TX0003039148, TX0003065071, TX0003071648, TX0003090328, TX0003117665, TX0003142895, TX0003195915, TX0003203223, TX0003202401, TX0003217797, TX0002821818, TX0002821817, TX0002833027, TX0002833023, TX0002888894, TX0002904815, TX0002904816, TX0002958017, TX0002958016, TX0002958015, TX0002957506, TX0002507961, TX0002507965, TX0002586758, TX0002586761, TX0002620337, TX0002620343, TX0002620336, TX0003210277,

Sedgwick LLP

TX0003210268, TX0002795028, TX0002795052, TX0002795062, TX0002239341, TX0002259840, TX0002368705, TX0002368687, TX0002368623, TX0002368652, TX0002368651, TX0002403752, TX0002403750, TX0002507997, TX0002507988, TX0002507999, TX0002034678, TX0002112384, TX0002112393, TX0002103462, TX0002103461, TX0002154030, TX0002146343, TX0002146434, TX0002146344, TX0002210969, TX0002239278, TX0002239339, TX0001806814, TX0001806586, TX0001858436, TX0001858445, TX0001890566, TX0001944948, TX0001944947, TX0001947041, TX0001975391, TX0001962351, TX0002112374 ,TX0001589736, TX0001589697, TX0001589696, TX0001630455, TX0001619442, TX0001719293, TX0001719295, TX0001676950, TX0001720095, TX0001779648, TX0001779638, TX0001806500, TX0001325951, TX0001589725, TX0001371820, TX0001405330, TX0001405328, TX0001405329. TX0001440323, TX0001473554, TX0001589726, TX0001485321, TX0001485320, TX0001473654, TX0001589735, TX0001108018, TX0001108015, TX0001108014, TX0001108017, TX0001189900, TX0001204571, TX0001189907, TX0001589737, TX0001248663, TX0001345918, TX0001589738, TX0001345917, TX0001589733, TX0001325950, TX0000870107, TX0000901230, TX0000901235, TX0000951003, TX0000936617, TX0000963053, TX0000997001, TX0001009186, TX0001104113, TX0001013993, TX0001104114, TX0001108016, TX0000650166, TX0000650165, TX0000681436, TX0000715395, TX0000769291, TX0000723411, TX0000739020, TX0000901237, TX0000791548, TX0000842305, TX0000826931, TX0000870103, TX0000407003, TX0000453221, TX0000453193, TX0000460660, TX0000486318, TX0000511667, TX0000530009, TX0000547913, TX0000556587, TX0000591313, TX0000590389, TX0000655381, TX0000186081, TX0000229198, TX0000307161, TX0000260189, TX0000265181, TX0000276037, TX0000328427, TX0000396934, TX0000369822, TX0000397539, and TX0000395984 (the "Omni Copyrights").

/ / /

25.     On January 16, 2007, Omni Publications was merged into General Media International, Inc.  By February 24, 1995, General Media International, Inc., had become Penthouse International Ltd., as evidenced by a Certificate of Change filed with the Secretary of the State of New York.  On October 2, 1995, Penthouse International, Ltd., changed its name to General Media Communications, Inc.  As a result of the mergers and the name change, all of the Omni Copyrights became the property of General Media effective no later than January 16, 2007.  On August 10, 2017, General Media submitted a Memorandum of Copyright Transfer to the United States Copyright Office for recording.  General Media remains the current owner of the Omni Copyrights as reflected in the recorded Memorandum of Copyright Transfer.

26.     Penthouse Global Media is the successor to, assignee and current owner of the common law OMNI trademarks and the United States trademark registrations and trademark application for the OMNI trademark, including Registration No. 4932689 for magazines of science fact, fiction and fantasy, Registration No. 4964743 for an internet website featuring electronic publications in the fields of science fiction, science fact, fantasy and futurism, and Serial No. 86002052, as well as international registrations (collectively, the "OMNI Marks"), and all of the goodwill associated with the OMNI Marks.

27.     Despite the fact that an application for registration of the OMNI Marks in connection with magazines had already been filed with the USPTO by Penthouse's predecessor in interest, signaling to the world that the OMNI Marks were not available for use by Defendants, in 2013, Defendants Frommer and Schwartz again willfully and blatantly disregarded the intellectual property rights of others and began planning to publish an online science and science fiction magazine using the OMNI Marks and to republish and sell archival material from the original OMNI magazine protected by the Omni Copyrights.

/ / /

Sedgwick LLP

1    28.    On or about June 27, 2013, Defendant Jerrick Ventures, LLC filed an

2 application for registration of the purported trademark OMNI REBOOT (Serial No.

3 85,972,230), which registration was refused by the United States Patent and

4 Trademark Office because of a likelihood of confusion with a registered OMNI

5 Mark.  On or about May 31, 2016, Jerrick Ventures, LLC filed a cancellation

6 proceeding before the Trademark Trial and Appeal Board ("TTAB") seeking to

7 cancel the OMNI Mark (Cancellation No. 92063829).  Because Penthouse General

8 Media seeks a declaration in the present action that its registered OMNI Marks are

9 valid and should not be cancelled, it has moved to have the cancellation proceeding

10 before the TTAB suspended pending the judgment in this action.

11    29.    Despite knowing of the existence of the registered OMNI Marks, and

12 despite being denied registration of Omni Reboot, Defendants nonetheless

13 proceeded to willfully and blatantly infringe on the OMNI Marks and Omni

14 Copyrights by operating an online magazine at https://omni.media, which it refers to

15 as OMNI Reboot, that not only uses the OMNI Marks in connection with the

16 publication of an online magazine featuring science and science fiction topics, but

17 also contains archival material from the original OMNI magazine, including

18 magazine articles and reproductions of OMNI magazine covers, all without the

19 permission or consent of Penthouse.  Defendants also reproduced, published, offered

20 for sale, and sold electronic copies of the Omni magazines on the website

21 www.amazon.com for viewing on Amazon's Kindle products, and has continued to

22 post them on various websites even during the pendency of this action, including

23 www.vimeo.com and likely others that will continue to be discovered during the

24 course of the litigation.

25    30.    Defendants have issued various press releases to advertise and attract

26 consumer attention to their activities using the OMNI Marks and selling electronic

27 copies of the magazines protected by the Omni Copyrights.  For example, on or

28 about September 12, 2016, Defendant Jerrick Media Holdings, Inc. released a press

Sedgwick LLP

1   release stating, among other things, that: "Jerrick has released a three part series of

2   science fiction stories available for digital download, entitled OMNI Best of Science

3   Fiction One, Two, and Three.  Content from the series is featured on Jerrick Media's

4   brand OMNI, born from the science fiction magazine of the 1970s, 80s, and 90s,

5   created by Bob Guccione."  On or about May 30, 2017, Jerrick Media Holdings, Inc.

6   issued a press release stating that it had "announced today the launch of *The Omni*

7   *Archive*…[that] features every issue of the seminal science fiction publication

8   Omni" and that "Omni Magazine was an award-winning science fiction

9   magazine…[c]reated by publishing mogul Bob Guccione."  The press release further

10   advertised that "all 200 issues of the published magazines are available for viewing

11   and purchase on Amazon….  This is the first time the collection has been available

12   for digital download in high-resolution."

13         31.     Various media outlets have republished information released by

14   Defendants.  For example, on or about June 26, 2017, Variety magazine online

15   (www.variety.com) reported that Defendant Jerrick Media had partnered with Jared

16   Leto and Paradox LLC to produce original content using the OMNI Marks.

17   Similarly, www.pagesix.com reported that Jared Leto had partnered with Defendant

18   Rick Schwartz to develop a futuristic television anthology under the OMNI Marks.

19   Defendants' dissemination of such information to the media reflects their ongoing

20   and blatant disregard for the intellectual property rights of Penthouse and their

21   manifest intent to capitalize on those rights for their own gain.

22         32.     On or about July 26, 2017, Penthouse discovered that Defendants were

23   advertising their exploitation of the OMNI Marks and Omni Copyrights on the

24   YouTube, LLC website at:

25   https://www.youtube.com/channel/UCRetf_M4Qc0WLG06PPCJ_Pg.

26   / / /

27   / / /

28   / / /

**FIRST CLAIM FOR RELIEF**

(Copyright Infringement)

33.    Penthouse incorporates the allegations of each foregoing paragraph as though fully set forth herein.

34.    Penthouse Global Media is the owner of the following registered copyrights relating to the motion picture *Caligula*:

     a.    Registration No. TX0000204514 (created in 1978 and registered in 1979): *Gore Vidal's Caligula* (novel);

     b.    Registration No. PA0000083587 (created in 1979 and registered in 1980): *Caligula / a Penthouse Films International and Felix Cinematografica, S.R.L. production; a Bob Guccione, Franco Rossellini Production* (motion picture);

     c.    Registration No. PA0000449630 (1990 supplement to Registration No. PA0000083587): *Caligula By Felix Cinematografica* (motion picture); and

     d.    Registration No. PA0001737842 (created in 2007 and registered in 2009): *Caligula: The Imperial Edition* (motion picture *Caligula* with alternate pre-release version, *The Making of Caligula* documentary, audio commentaries, video interviews, deleted scenes, alternate scenes, behind the scenes footage, set photos, packaging text and artwork).

35.    Defendants have had access to the motion picture *Caligula* through its widespread distribution since its creation in 1979, as well as through the purchase by Mr. Frommer of various items of Mr. Guccione's memorabilia.  Defendant GC's access to the motion picture *Caligula* was admitted in its complaint for declaratory relief filed on September 25, 2013, in the case of *In re PMGI Holdings Inc.*, United States Bankruptcy Court for the District of Delaware Case No. 13-52259-CSS, in which it sought a judicial declaration that it was not infringing on any intellectual property rights, including in the motion picture *Caligula*.

36.    Defendants recently have made a copy of the motion picture *Caligula* available to the public for purchase or rental on Vimeo.com.

37.    General Media is the owner of the Omni Copyrights.  Defendants have been copying, reproducing, selling, distributing, and making works derivative of the magazines protected by the Omni Copyrights, including without limitation, on the websites www.youtube.com, https://omni.media, and www.amazon.com.

38.    Penthouse has never transferred or licensed any interest in any copyrights in *Caligula* or any of the Omni Copyrights to any of the Defendants, either in writing or otherwise, and has not consented to Defendants' reproduction, publication, distribution and sale of the motion picture *Caligula* or the Omni magazines.

39.    Defendants' unauthorized reproduction, publication, distribution and sale of the motion picture *Caligula* and the Omni magazines constitutes infringement of Penthouse's registered copyrights in violation of the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

40.    Penthouse is informed and believes, and based thereon alleges, that Defendants' copying, distribution and sale of the motion picture *Caligula* and the Omni magazines, after being informed of Penthouse's copyrights, was deliberate, willful, malicious, oppressive, and in manifest disregard of Penthouse's proprietary rights.

41.    Defendants' willful copyright infringement has caused, and will continue to cause, Penthouse to suffer substantial injuries, loss, and damage to its proprietary and exclusive rights to the motion picture *Caligula* and the Omni magazines and further has damaged Penthouse's business reputation and goodwill, diverted their trade, and caused loss of profits, all in an  as-yet undetermined amount.  Penthouse is entitled to compensatory damages, as well as the profits earned by Defendants as a result of their infringement pursuant to 17 U.S.C. § 504.

13

1 | /// 

2 | 42.    Defendants' copyright infringement, and the threat of continuing

3 | infringement, have caused and will continue to cause Penthouse repeated and

4 | irreparable injury.  It would be difficult to ascertain the amount of money damages

5 | that would afford Penthouse complete relief at law for Defendants' acts and

6 | continuing acts.  Penthouse's remedy at law is not adequate to compensate it for the

7 | injuries already inflicted and further threatened.  Therefore, Penthouse is entitled to

8 | preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502.

9 | 43.    Penthouse is also entitled to recover its attorneys' fees and costs of suit

10 | pursuant to 17 U.S.C. § 505.

11 | **SECOND CLAIM FOR RELIEF**

12 | (Infringement of Registered Trademarks Under 15 U.S.C. § 1114)

13 | 44.    Penthouse incorporates the allegations of each foregoing paragraph as

14 | though fully set forth herein.

15 | 45.    General Media is the owner of the CALIGULA Marks.

16 | 46.    Penthouse Global Media is the owner of the registered OMNI Marks,

17 | including Registration No. 4932689 for magazines of science fact, fiction and

18 | fantasy, Registration No. 4964743 for an internet website featuring electronic

19 | publications in the fields of science fiction, science fact, fantasy and futurism.

20 | 47.    Defendants are using or have used the CALIGULA Marks in

21 | commerce in connection with the marketing, distribution and sale of the *Caligula*

22 | motion picture in various media, including on Vimeo.com.  Defendants are using the

23 | OMNI Marks in commerce in connection with their online science and science

24 | fiction magazine and sales of OMNI magazines and related goods.

25 | 48.    Defendants never sought or received Penthouse 's authorization to use

26 | the CALIGULA or OMNI Marks for any purpose.

27 | 49.    Defendants' use of the CALIGULA and OMNI Marks is likely to cause

28 | and/or has actually caused confusion in the marketplace by creating the false and

Sedgwick

mistaken impression that Defendants' distribution and sale of the *Caligula* motion picture and/or publication of an OMNI online magazine and related activities are affiliated, connected or associated with Penthouse, or that they originate with, or are sponsored or approved by Penthouse.

50.    Penthouse is informed and believes, and based thereon alleges, that Defendants' purpose in using the CALIGULA and OMNI Marks was and is to deceive, mislead and confuse customers and the public into believing that Defendants' activities are affiliated, connected or associated with Penthouse, or that they originate with, or are sponsored or approved by Penthouse, and to trade on the substantial and historical fame, notoriety, reputation and goodwill associated with the CALIGULA and OMNI Marks.

51.    Defendants' use of the CALIGULA and OMNI Marks violates the Lanham Act, 15 U.S.C. § 1114.  Defendants' use of the CALIGULA and OMNI Marks also falls within the definition of a counterfeit mark set forth in the Lanham Act, 15 U.S.C. § 1116(d).

52.    Defendants' use of the CALIGULA and OMNI Marks has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to Penthouse in the diminution of value and goodwill of the CALIGULA and OMNI Marks, and in their impairment to serve as trademarks, for which Penthouse has no adequate legal remedy.  Accordingly, Penthouse is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

53.    As a direct and proximate result of Defendants' wrongful conduct, Penthouse has been and will continue to be damaged by, without limitation, loss of profit, and diminution in the value of the CALIGULA and OMNI Marks and in its reputation and goodwill, in an amount to be proven at trial.

54.    Defendants' wrongful use of the CALIGULA and OMNI Marks was and continues to be knowing, deliberate, willful, fraudulent, and without extenuating

1   circumstances.  Because Defendants are intentionally, knowingly, and willfully

2   using counterfeits of the registered CALIGULA and OMNI Marks, Penthouse is

3   entitled to recover three times the amount of actual damages or profits, whichever is

4   greater, or statutory damages, and attorney's fees and costs incurred in this action

5   pursuant to 15 U.S.C. § 1117(a) - (c).

6                         **THIRD CLAIM FOR RELIEF**

7              (False Designation of Origin Under 15 U.S.C. § 1125(a))

8        55.    Penthouse incorporates the allegations of each foregoing paragraph as

9   though fully set forth herein.

10       56.    The CALIGULA and OMNI Marks are distinctive of goods and

11  services originating with Penthouse.  The Defendants' unauthorized use of the

12  CALIGULA and OMNI Marks, particularly when combined with references to Mr.

13  Guccione and Penthouse, is likely to cause and, on information and belief, has

14  actually caused confusion in the marketplace by creating the false and mistaken

15  impression that Defendants' advertising, rental and sales of the *Caligula* motion

16  picture, and distribution of the online Omni Reboot magazine, are affiliated,

17  connected or associated with Penthouse, or that they originate with, or are sponsored

18  or approved by Penthouse.

19       57.    Defendants' use of the CALIGULA and OMNI Marks has caused and,

20  if not enjoined, will continue to cause, irreparable and continuing harm to Penthouse

21  in the diminution of their value and goodwill as trademarks, and in their impairment

22  to serve as a trademarks, for which Penthouse has no adequate legal remedy.

23  Accordingly, Penthouse is entitled to provisional, preliminary and permanent

24  injunctive relief to compel cessation of all infringing and otherwise harmful

25  conduct.

26       58.    As a direct and proximate result of Defendants' wrongful conduct,

27  Plaintiffs have been and will continue to be damaged by, without limitation, lost

28  sales and diminution in the value of the CALIGULA and OMNI Marks and in its

Sedgwick LLP

1 | reputation and goodwill, in an amount to be proven at trial.

2 |     59.    Defendants' wrongful use of the CALIGULA and OMNI Marks is

3 | knowing, deliberate, willful, fraudulent, and without extenuating circumstances.

4 | Penthouse is therefore entitled to recover its actual damages and attorney's fees and

5 | costs incurred in this action, as well as Defendants' profits from their infringement

6 | of the CALIGULA and OMNI Marks.

7 | **FOURTH CLAIM FOR RELIEF**

8 | (Trademark Dilution Under 15 U.S.C. § 1125(c))

9 |     60.    Penthouse incorporates the allegations of each foregoing paragraph as

10 | though fully set forth herein.

11 |     61.    The CALIGULA and OMNI Marks are famous and distinctive in that

12 | they are widely recognized by the general consuming public as a designation of

13 | Penthouse as the source of the goods or services represented by the CALIGULA and

14 | OMNI Marks.

15 |     62.    Defendants' use of the CALIGULA and OMNI Marks impairs the

16 | distinctiveness of the famous CALIGULA and OMNI Marks and, as such, causes

17 | dilution by blurring.

18 |     63.    Defendants willfully intended to trade on the recognition and value of

19 | the CALIGULA and OMNI Marks.

20 |     64.    Defendants' use of the CALIGULA and OMNI Marks has caused and,

21 | if not enjoined, will continue to cause, irreparable and continuing harm to Penthouse

22 | in the diminution of their value and goodwill as trademarks, and in their impairment

23 | to serve as a trademarks, for which Penthouse has no adequate legal remedy.

24 | Accordingly, Penthouse is entitled to provisional, preliminary and permanent

25 | injunctive relief to compel cessation of all infringing and otherwise harmful

26 | conduct.

27 |     65.    Defendants' wrongful use of the CALIGULA and OMNI Marks

28 | commenced after October 6, 2006.  Defendants' wrongful use of the CALIGULA

Sedgwick LLP

and OMNI Marks was and continues to be knowing, deliberate, willful, fraudulent, and without extenuating circumstances.  Penthouse is therefore entitled to recover its damages, Defendants' profits, and Penthouse's attorneys' fees and costs of this action, pursuant to 15 U.S.C. § 1117(a).

66.     Penthouse is further entitled to an order that all materials in the possession of the Defendant bearing the CALIGULA and OMNI Marks be delivered up and destroyed pursuant to 15 U.S.C. § 1118.

**FIFTH CLAIM FOR RELIEF**

(Common Law Trademark Infringement)

67.     Penthouse incorporates the allegations of each foregoing paragraph as though fully set forth herein.

68.     Defendants are using the CALIGULA Marks in commerce in connection with their advertising, rental and sale of copies of the *Caligula* motion picture.  Defendants are using both the exact word that comprises the CALIGULA Marks, as well as references to Mr. Guccione and Penthouse.

69.     Defendants are using the OMNI Marks in commerce in connection with their publication of the online Omni Reboot magazine.  Defendants are using both the exact word that comprises the OMNI Marks, as well as references to Mr. Guccione and Penthouse.

70.     Defendants never sought or received Penthouse's authorization to use the CALIGULA Marks or the OMNI Marks.

71.     Defendants' use of the CALIGULA and OMNI Marks is likely to cause and/or has actually caused confusion in the marketplace by creating the false and mistaken impression that Defendants' advertising, sales and rentals of the *Caligula* motion picture, and their online publication of the Omni Reboot magazine, are being marketed are affiliated, connected or associated with Penthouse, or that they originate with, or are sponsored or approved by Penthouse.

72.     Penthouse is informed and believes, and based thereon alleges, that

18

Defendants' purpose in using the CALIGULA and OMNI Marks was and is to deceive, mislead and confuse customers and the public into believing that Defendants' advertising, sales and rentals of the *Caligula* motion picture, and their online publication of the Omni Reboot magazine, are affiliated, connected or associated with Penthouse, or that they originate with, or are sponsored or approved by Penthouse, and to trade on the substantial and historical fame, notoriety, reputation and goodwill associated with the CALIGULA and OMNI Marks.

73.     Defendants' use of the CALIGULA and OMNI Marks violates the common law of the State of California.

74.     Defendants' use of the CALIGULA and OMNI Marks has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to Penthouse in the diminution of value and goodwill of the CALIGULA and OMNI Marks, and in their impairment to serve as trademarks, for which Penthouse has no adequate legal remedy.  Accordingly, Penthouse is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

75.     As a direct and proximate result of Defendants' wrongful conduct, Penthouse has been and will continue to be damaged by, without limitation, loss of profit, and diminution in the value of the CALIGULA and OMNI Marks and in its reputation and goodwill, in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF

(Common Law Unfair Competition)

76.     Penthouse incorporates the allegations of each foregoing paragraph as though fully set forth herein.

77.     Defendants' use of the CALIGULA and OMNI Marks has the effect of passing off Defendants' advertising, sale and rental of the *Caligula* motion picture, and their online publication of the Omni Reboot magazine and related sales activities, as being produced, endorsed or authorized by Penthouse.

1   ///

2       78.    Defendants' misconduct constitutes unfair competition in that it offends

3   established public policy and is immoral, unethical, oppressive, unscrupulous and

4   injurious to consumers.

5       79.    As a direct and proximate result of Defendants' wrongful conduct,

6   Penthouse has been and will continue to be damaged by, without limitation, loss of

7   profit, and diminution in the value of the CALIGULA and OMNI Marks and in their

8   reputation and goodwill, in an amount to be proven at trial.

9       80.    The acts of unfair competition alleged herein were committed with

10   oppression, fraud and malice.  Specifically, Defendants used the CALIGULA and

11   OMNI Marks with knowledge that Penthouse owns the exclusive right to such use.

12   Defendants' continuing use of the CALIGULA and OMNI Marks was unauthorized

13   and caused consumer confusion, resulting in continuing injury to Penthouse.

14       81.    Penthouse requests the imposition of exemplary damages pursuant to

15   California Civil Code § 3294.

16   **SEVENTH CLAIM FOR RELIEF**

17   (Unfair Competition in Violation of

18   California Business & Professions Code § 17200, *et seq.*)

19       82.    Penthouse incorporates the allegations of each foregoing paragraph as

20   though fully set forth herein.

21       83.    Defendants' unauthorized use of the CALIGULA and OMNI Marks

22   and copyrights constitutes unlawful, unfair or fraudulent business acts or practices

23   within the meaning of California Business & Professions Code § 17200.

24       84.    Defendants' wrongful conduct has caused and, if not enjoined, will

25   continue to cause irreparable and continuing harm to Penthouse, for which it has no

26   adequate legal remedy.

27   ///

28   ///

Sedgwick

1   / / /

2   **EIGHTH CLAIM FOR RELIEF**

3   (Trademark Dilution in Violation of

4   California Business & Professions Code § 14247, *et seq.*)

5       85.    Penthouse incorporates the allegations of each foregoing paragraph as

6   though fully set forth herein.

7       86.    The CALIGULA and OMNI Marks are famous and distinctive in

8   California in that they are widely recognized by the general consuming public of

9   this state as a designation of Penthouse as the source of the goods or services

10  represented by the CALIGULA and OMNI Marks.

11      87.    Defendants began using the CALIGULA and OMNI Marks without

12  authorization from Penthouse after the CALIGULA and OMNI Marks had become

13  famous.

14      88.    Defendants' unauthorized use of the CALIGULA and OMNI Marks is

15  likely to cause dilution of the famous CALIGULA and OMNI Marks.

16      89.    Defendants' unauthorized use of the CALIGULA and OMNI Marks

17  has caused and, if not enjoined, will continue to cause irreparable and continuing

18  harm to Penthouse, for which it has no adequate legal remedy.

19      90.    Defendants' dilution of the CALIGULA and OMNI Marks was willful,

20  as evidenced by their continuing use of the CALIGULA and OMNI Marks after

21  being advised of Penthouse's exclusive trademark rights, entitling Penthouse to an

22  award of up to three times Defendants' profits from, and up to three times all

23  damages suffered by reason of Defendants' wrongful use of the CALIGULA and

24  OMNI Marks, pursuant to Sections 14247(b) and 14250 of the California Business

25  & Professions Code.

26  **NINTH CLAIM FOR RELIEF**

27  (Declaratory Relief)

28      91.    Penthouse incorporates the allegations of each foregoing paragraph as

Sedgwick LLP

1  though fully set forth herein.

2      92.   This is an action for declaratory judgment of the Penthouse's priority of

3  right as to the OMNI Marks pursuant to the Lanham Act, 15 U.S.C. § 1057(c).

4      93.   An actual and justiciable controversy exists between Penthouse and

5  Defendant Jerrick Ventures LLC regarding the parties' respective rights in regards to

6  the OMNI Marks, as evidenced by Jerrick Ventures LLC's filing of a Petition for

7  Cancellation of a registered OMNI Mark (Cancellation No. 92063829) (the

8  "Cancellation"),

9      94.   The registrant of the OMNI Mark that Jerrick Ventures LLC seeks to

10  cancel filed an intent-to-use application with the United States Patent and

11  Trademark Office on or about June 6, 2012.  The OMNI Mark was registered on the

12  Principle Register on April 5, 2016 (Reg. No. 4,932,689).  All of the OMNI Marks

13  were subsequently assigned to Penthouse, along with all of the goodwill associated

14  with them.

15      95.   In its Cancellation, Jerrick Ventures LLC admits that it did not start

16  using the OMNI or OMNI REBOOT marks in commerce until in or about August

17  2013.  Jerrick Ventures LLC further admits that it did not file an application to

18  register the purported OMNI REBOOT trademark until June 27, 2013.

19      96.   Jerrick Ventures LLC contends in the Cancellation that the OMNI

20  Mark should be cancelled because (a) there is a likelihood of confusion between the

21  OMNI and OMNI REBOOT marks, (b) the registrant of the OMNI Mark had no

22  bona fide intent to use the OMNI Mark in commerce at the time she filed her intent-

23  to-use application, and (c) Jerrick Ventures LLC obtained the right to use the OMNI

24  Mark and all of the goodwill associated therewith from the Estate of Bob Guccione.

25      97.   Penthouse denies the above-referenced contentions of Jerrick Ventures

26  LLC in the Cancellation and contends, and seeks this Court's declaration, that the

27  registrant's filing of the intent-to-use application on June 6, 2012, conferred a

28  priority of right superior to any rights of Jerrick Ventures LLC in any purported

Sedgwick

1  / / /

2  OMNI REBOOT trademark and that the Cancellation should be dismissed with

3  prejudice.

**TENTH CLAIM FOR RELIEF**

(False Advertising in Violation of California

Business and Professions Code § 17500, *et seq.*)

7  98.    Penthouse incorporates the allegations of each foregoing paragraph as

8  though fully set forth herein.

9  99.    Defendants have disseminated press releases and other online

10  publications falsely indicating or stating that they are the owners of the OMNI and/

11  or CALIGULA Marks and copyrights in an effort to make sales of copies of the

12  *Caligula* motion picture, the OMNI magazines, memorabilia, and other goods.

13  100.   Defendants know that they do not own the OMNI and CALIGULA

14  Marks or copyrights.  Not only have they not been assigned any such copyrights or

15  trademarks, but the USPTO expressly refused to register Defendants' purported

16  OMNI REBOOT mark due to the prior registration of one of the OMNI Marks, and

17  Penthouse has notified Defendants of their infringement, including by way of its

18  September 2013 cease and desist letter to Defendants GC and Frommer.

19  101.   Defendants' false statements as to their ownership of the OMNI and

20  CALIGULA Marks and copyrights are causing consumers to purchase copies of the

21  OMNI magazine and *Caligula* motion picture from Defendants, instead of from

22  Penthouse, the rightful owner of the intellectual property rights.

23  102.   Defendants' conduct constitutes false advertising in violation of

24  California Business and Professions Code § 17500, *et seq.*

25  103.   As a direct and proximate result of Defendants' false advertising,

26  Penthouse has been and will continue to be damaged by, without limitation, loss of

27  profit, and diminution in the value of the CALIGULA and OMNI Marks and in its

28  reputation and goodwill, in an amount to be proven at trial.  If not enjoined,

Sedgwick LLP

85632204v1

23

1  / / /

2  Defendants' false advertising will continue to cause irreparable and continuing harm

3  to Penthouse, for which it has no adequate legal remedy.

4  **ELEVENTH CLAIM FOR RELIEF**

5  (Unjust Enrichment)

6  104.   Penthouse incorporates the allegations of each foregoing paragraph as

7  though fully set forth herein.

8  105.   Through their wrongful and willful use of Penthouse's intellectual

9  property, Defendants have received various benefits, including revenues generated

10  by the publication and distribution of the *Caligula* motion picture and the OMNI

11  Magazine, as well as press, media and consumer attention to their unauthorized

12  activities.  Defendants have unjustly retained all such benefits at the expense of

13  Penthouse and have been unjustly enriched.

14  106.   As a direct and proximate result of Defendants' unjust retention of the

15  benefits they have received from their use of Penthouse's intellectual property,

16  Penthouse has been and will continue to be damaged by, without limitation, loss of

17  profit, and diminution in the value of the CALIGULA and OMNI Marks and in its

18  reputation and goodwill, in an amount to be proven at trial, for which it is entitled to

19  restitution.

20

21  **PRAYER FOR RELIEF**

22  WHEREFORE, Penthouse prays for relief as follows:

23  1.      The damages sustained by Penthouse and Defendants' profits;

24  2.      Statutory damages pursuant to 17 U.S.C. § 504;

25  3.      Treble damages for use of a counterfeit trademark pursuant to 15

26  U.S.C. § 1117(b);

27  4.      Punitive damages;

28  5.      Injunctive relief prohibiting Defendants from any future unauthorized

Sedgwick

1   use of Penthouse's property that is the subject of this lawsuit;

2        6.      An order that all materials in the possession of the Defendants bearing

3   the CALIGULA and OMNI Marks be delivered up and destroyed;

4        7.      A judicial declaration that the registrant's filing of the intent-to-use

5   application on June 6, 2012, conferred a priority of right superior to any rights of

6   Jerrick Ventures LLC in any purported OMNI REBOOT trademark and that the

7   Cancellation should be dismissed with prejudice.

8        8.      Penthouse's costs in this action and reasonable attorney's fees and

9   expenses;

10        9.      Prejudgment interest; and

11        10.     For such additional and further relief as this Court deems just and

12   proper.

13

14   Dated:  December 11, 2017          SEDGWICK LLP

15

16                                      By: _/s/ Caroline H. Mankey_____

17                                          Caroline H. Mankey
                                            Attorneys for Plaintiffs
18                                          PENTHOUSE GLOBAL MEDIA, INC.
                                            and GENERAL MEDIA
19                                          COMMUNICATIONS, INC.

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiffs Penthouse Global Media, Inc. and General Media Communications,

3  Inc. hereby demand a trial by jury on all issues triable by jury.

4  Dated:  December 11, 2017          SEDGWICK LLP

5

6                                By: */s/ Caroline H. Mankey*

7                                   Caroline H. Mankey
                                     Attorneys for Plaintiff
8                                   PENTHOUSE GLOBAL DIGITAL INC.
                                     and GENERAL MEDIA
9                                   COMMUNICATIONS, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

85632204v1                          26